EXHIBIT "1"

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
   Including Professional Corporations
DAVID J. MCCARTY, Cal. Bar No. 77346
THEODORE A. COHEN, Cal. Bar No. 151427
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
dmccarty@sheppardmullin.com
tcohen@sheppardmullin.com
Telephone:   213-620-1780
Facsimile:   213-620-1398

Attorneys for Secured Creditor U.S. Bank National Association

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>Gomes Enterprises, LLC,<br><br>        Debtor. | Case No. 10-14738-RN<br><br>Involuntary Chapter 7<br><br>**STIPULATION BETWEEN SECURED CREDITOR U.S. BANK NATIONAL ASSOCIATION AND ALLEGED DEBTOR GOMES ENTERPRISES, LLC FOR CONTINUED USE OF FUNDS AND GRANTING OF LIENS AND ADEQUATE PROTECTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 303(f), 361, 362 AND 549(b)** |

      This Stipulation between Secured Creditor U.S. Bank National Association and the Alleged Debtor Gomes Enterprises, LLC For Continued Use of Funds and Granting of Liens and Adequate Protection Pursuant to Bankruptcy Code Sections 105, 303(f), 361, 362 and 549(b) (the "Stipulation") is entered into by and between alleged debtor Gomes Enterprises, LLC dba A to Z Metals("Alleged Debtor") and secured creditor U.S. Bank National Association ("U.S. Bank") with reference to the following facts:

# FACTS

**Involuntary Petition**

A. On February 10, 2010 (the "Petition Date"), Hanmi Bank, as sole petitioning creditor, filed an involuntary bankruptcy petition against Alleged Debtor, thereby commencing this bankruptcy case (the "Case"). An order for relief has not been entered in the Case.

**U.S. Bank Loans**

B. Pursuant to a Term Loan Agreement dated as of December 16, 2004 (as amended from time to time, "Term Loan Agreement A") by and between the Alleged Debtor and U.S. Bank, U.S. Bank made a loan to the Alleged Debtor. The loan is evidenced by, among other things, that certain Term Note dated December 16, 2004 made payable to U.S. Bank in the stated principal amount of $875,000 and issued pursuant to Term Loan Agreement A (as such note has been amended from time to time, "Term Note A"). Term Loan Agreement A and Term Note A were amended by that certain Amendment to Loan Agreement and Note dated as of May 22, 2007.

C. Pursuant to a Term Loan Agreement dated as of August 30, 2005 (as amended from time to time, "Term Loan Agreement B") by and between the Alleged Debtor and U.S. Bank, U.S. Bank made a loan to the Alleged Debtor. The loan is evidenced by, among other things, that certain Term Note dated August 30, 2005 made payable to U.S. Bank in the stated principal amount of $500,000 and issued pursuant to Term Loan Agreement B (as such note has been amended from time to time, "Term Note B"). Term Loan Agreement B and Term Note B were amended by that certain Amendment to Loan Agreement and Note dated as of May 22, 2007.

D. Pursuant to an Amended and Restated Credit Agreement dated as of October 16, 2006 (as amended from time to time, "Credit Agreement"; and together with Term Loan Agreement A and Term Loan Agreement B, collectively, the "Gomes Loan Agreements"), U.S. Bank agreed to make certain loans to the Alleged Debtor. The Credit Agreement was amended by those certain amendments dated as of March 28, 2007; May 29, 2007; September 19, 2007; December 12, 2007; December 28, 2007; February 27, 2008; August 22, 2008; September 23, 2008; and January 13, 2009 (the "Amendments").

E. The loans made pursuant to the Credit Agreement are evidenced by, among other things, (i) that certain Equipment Refinance Term Note dated December 12, 2007 made payable to U.S. Bank in the stated principal amount of $1,200,000 and issued pursuant to the Credit Agreement (as such note has been amended from time to time, "Term Note C"), (ii) that certain Revolving Credit Note dated January 13, 2009 made payable to U.S. Bank in the stated principal amount of $18,400,000 and issued pursuant to the Credit Agreement (as such note has been amended from time to time, the "Revolving Note"), (iii) that certain Term Note dated December 28, 2007 made payable to U.S. Bank in the stated principal amount of $2,549,998 and issued pursuant to the Credit Agreement (as such note has been amended from time to time, "Term Note D"); and (iv) that certain 2008 Term Note dated September 23, 2008 made payable to U.S. Bank in the stated principal amount of $675,000 and issued pursuant to the Credit Agreement (as such note has been amended from time to time "2008 Term Note").

F. Term Note A, Term Note B, Term Note C, Term Note D, the Revolving Note and the 2008 Term Note are hereinafter collectively referred to as the "Notes".

G. To secure performance of its obligations under the Gomes Loan Agreements and Notes, the Alleged Debtor made, executed and delivered to U.S. Bank an Amended and Restated

Business Security Agreement dated as of October 16, 2006 (the "Security Agreement"). The Security Agreement grants a security interest in the personal property described therein (the "Collateral").

H.  U.S. Bank properly perfected its security interest as described in the Security Agreement by, among other things, filing a Uniform Commercial Code financing statement with the California Secretary of State on December 15, 2003 as document no. 03-35360858 (as amended and duly continued from time to time, the "Financing Statement"). *[Was an extension filed?]*

I.  To further induce U.S. Bank to make the above-referenced loans (the "Loans"), the Loans were guaranteed by the guarantors described below:

(i)  Unlimited Metals guaranteed the Loans pursuant to that certain Amended and Restated Corporate Guarantee Agreement dated as of October 16, 2006 by Unlimited Metals in favor of U.S. Bank (the "Corporate Guarantee"). To secure performance of its obligations under the Corporate Guarantee, Unlimited Metals made, executed and delivered to U.S. Bank a General Business Security Agreement dated as of October 16, 2006 (the "Unlimited Metals Security Agreement").

(ii)  To further induce U.S. Bank to make the Loans, Steve Hwang executed an Amended and Restated General Guarantee dated as of October 16, 2006 in Bank's favor (the "Hwang Guarantee"); Sam Lee executed an Amended and Restated General Guarantee dated as

Exhibit Exhibit 1 to Alleged Debtors Emergency Motion    Page 6 of 19

of October 16, 2006 in Bank's favor (the "Lee Guarantee"); and David Gomes executed an Amended and Restated General Guarantee dated as of October 16, 2006 in U.S. Bank's favor (the "David Gomes Guarantee")  Steve Hwang, Sam Lee and David Gomes are sometimes collectively referred to herein as, the "Individual Guarantors.".

(iii)    The David Gomes Guarantee, Lee Guarantee and Hwang Guarantee are collectively referred to as the "Individual Guarantees", and together with the Corporate Guarantee, are referred to as the "Guarantees".

J.    The Gomes Loan Agreements, Notes, Security Agreement, Financing Statement, Guarantees, Unlimited Metals Security Agreement, Unlimited Metals Financing Statement and any other documents executed in connection therewith are referred to herein as the "Loan Documents".

K.    Events of Default under the Loan Documents exist.

L.    On July 30, 2009 and August 5, 2009, U.S. Bank notified the Alleged Debtor by letter of a default and accelerated all of the obligations owing to U.S. Bank.

M.    At the request of the Alleged Debtor, U.S. Bank agreed to forbear from exercising its default rights and remedies pursuant to a Forbearance Agreement dated as of August 10, 2009 (the " Forbearance Agreement") among the Alleged Debtor, certain others and U.S. Bank (a copy of which is attached hereto as exhibit "A), which generally provided for the following:

{7704.005-636355.DOC-(2)}

    1. All of Alleged Debtor's collections would be deposited into a blocked account at U.S. Bank.

    2. U.S. Bank would release funds from the blocked account and permit them to be used by Alleged Debtor so long as, among other things, the overadvance[1] did not increase from a baseline level, the outstanding amount of the revolving credit note was reduced by $3,000 per day (which U.S. Bank was permitted to deduct from the collection account), and principal and interest payments to U.S. Bank were kept current.

    3. If the overadvance increased from the baseline, U.S. Bank could apply funds from the collection account to reduce the overadvance to the baseline level.

   D. Pursuant to the Forbearance Agreement, the foregoing arrangement was to continue until the earlier of September 30, 2009 or the occurrence of a forbearance default. Although that date has passed, the parties generally continued to operate pursuant to the terms described in the Forbearance Agreement until the Petition Date.

   E. By reason of the overadvance and other events of default under the Forbearance Agreement, the Debtor is not entitled to use any cash or collections, and U.S. Bank is entitled to exercise its rights and remedies as a secured party, including taking possession of, collecting, applying and disposing of its collateral from the Alleged Debtor. However, the automatic stay under 11 U.S.C. section 362 prevents U.S. Bank from doing so. In the meantime, U.S. Bank has placed an administrative freeze on Alleged Debtor's

---

[1] The overadvance was measured based upon collateral of both the Alleged Debtor and an affiliate, Unlimited Metals, Inc..

deposit accounts at U.S. Bank pending the approval of this Stipulation..[2] *[This needs to be adjusted in light of the payment of certain checks]*

      F.    Notwithstanding 11 U.S.C. § 303(f), U.S. Bank is concerned that its interest in the Collateral will be diluted if (i) the Alleged Debtor sells, collects, and uses the proceeds of U.S. Bank's collateral without providing U.S. Bank a replacement lien on post-Petition Date assets and priority and super-priority claims, or (ii) Alleged Debtor utilizes cash and collections to pay pre-petition obligations, both of which would have the effect of reducing U.S. Bank's collateral without generating post-Petition Date collateral in return. U.S. Bank has requested and is entitled to adequate protection for its interest in the collateral.

      G.    To provide protection for U.S. Bank's interest in the Collateral, the Alleged Debtor and U.S. Bank have agreed that, during the time periods provided herein, the Alleged Debtor shall use cash and collections only in the manner permitted by the terms of the Forbearance Agreement as modified herein, and that the provisions of the Forbearance Agreement shall continue to apply on a post-Petition Date basis, all on the terms and conditions set forth herein.

      H.    Entering into this Stipulation and entry of an order approving this Stipulation are in the best interest of the Alleged Debtor's creditors, as implementing the Stipulation will, among other things, provide funds necessary for the Alleged Debtor's operations.

---

[2] The Alleged Debtor does not challenge the validity of the administrative freeze, and, in light the parties having entered into this Stipulation, U.S. Bank shall not be obligated to file a motion for relief from the automatic stay with respect to the frozen accounts.

1    I.    This Court has jurisdiction over this Case pursuant to 28 U.S.C.
§§ 157(b) and 1334. Consideration of this Stipulation and the motion seeking approval thereof constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). This Court has the authority to enter an order approving this Stipulation pursuant to 11 U.S.C. §§ 105, 303(f), 361, 362 and 549(b).

## STIPULATION

NOW, THEREFORE, the Alleged Debtor and U.S. Bank hereby stipulate as follows:

1.    **Incorporation.** All of the provisions contained in Facts A-I are true and correct and are expressly incorporated herein by reference.

2.    **Forbearance Agreement.** The Forbearance Agreement[3] is incorporated herein by this reference and shall apply effective as of the Petition Date until the Termination Date (as hereinafter defined), and the Alleged Debtor shall comply and continue to comply with all of its obligations thereunder, with the following additions and changes:

  a.    The automatic stay imposed by 11 U.S.C.§362 shall be modified to permit U.S. Bank to take all actions to implement this Stipulation except for exercising its rights and remedies against Alleged Debtor or its assets on account of any default under the Forbearance Agreement or this Stipulation.

---

[3] Capitalized terms used but not defined in this Stipulation shall have the same meanings as used in the Forbearance Agreement.

  b. The Alleged Debtor shall close its existing general account at U.S. Bank and open a new general account at U.S. Bank, which new general account shall be the account into which any funds the Alleged Debtor is permitted to use pursuant to the Forbearance Agreement shall be deposited. Any funds in the existing general account shall be transferred to the new general account.[4]

  c. The Alleged Debtor shall not pay any pre-Petition Date obligations, other than as set forth in the Budget approved by U.S. Bank (as defined in paragraph 2d below).

  d. The Alleged Debtor may use funds, and pay pre-Petition Date obligations, only in accordance with the budget attached hereto as <u>Exhibit B</u> (and such modifications thereto or supplements thereto for subsequent periods, but each case only if and to the extent approved in writing by U.S. Bank in its sole and absolute discretion) (collectively, the "Budget"), and shall at all times operate within the Budget, subject only to cumulative variances in any 30 day period of no more than __% for aggregate income, __% for each expenditure line item, and __% for aggregate expenditures. Alleged Debtor shall provide U.S. Bank with weekly reports, on or before _____ of each week, reflecting weekly and cumulative post-Petition Date results and variances from the Budget, with the same level of detail as the Budget.

  3. **Adequate Protection**. As adequate protection under Bankruptcy Code §§ 361 and 362 for, and to secure repayment by the Alleged Debtor to U.S. Bank of the amount of, (i) any cash used by Alleged Debtor after the Petition Date in which U.S. Bank how or hereafter has a security interest or lien (including pursuant to the adequate

---

[4] The references to "Collateral Account" and "Cash Collateral Account" in the Forbearance are intended to be synonymous.

1  protection lien granted herein), and (ii) any decrease in the aggregate value of U.S. Bank's
2  interest in the Collateral and the proceeds thereof from that existing on the Petition Date,
3  but subject to the terms of the Carve Out set forth in paragraph 4 below (collectively the
4  "Collateral Usage"), the Alleged Debtor hereby grants U.S. Bank a continuing security
5  interest and lien upon, and a right of setoff against, and Alleged Debtor hereby pledges and
6  assigns to U.S. Bank: (i) all of the Alleged Debtor's pre-petition and post-Petition Date
7  personal property assets; (ii) all products and proceeds thereof in whatever form and
8  wherever located, including, without limitation, all insurance proceeds and all claims
9  against third parties for loss or destruction of damage to any such assets or any portion
10 thereof; and (iii) avoidance actions pursuant to 11 U.S.C. §549 (collectively, the
11 "Adequate Protection Collateral"). Without limiting the foregoing, the Adequate
12 Protection Collateral includes without limitation the assets described in the Security
13 Agreement, a copy of which is attached hereto as <u>Exhibit C</u>, and all provisions of the
14 Security Agreement shall apply to the Adequate Protection Collateral. At the request of
15 U.S. Bank, at any time and from time to time, the Alleged Debtor shall execute and deliver
16 or cause to be executed and delivered to U.S. Bank, such agreements, documents and
17 instruments, and do or cause to be done such further acts, as U.S. Bank, in its discretion,
18 deems necessary or desirable to create, preserve, perfect or validate any security of interest
19 of U.S. Bank in the Adequate Protection Collateral and otherwise to effectuate the
20 provisions and purposes of this Stipulation. U.S. Bank may, but shall not be required to,
21 file any Uniform Commercial Code financing statements and record any additional
22 documents in any jurisdiction or take any other or further action to obtain, validate or
23 perfect the security interests and liens in the Adequate Protection Collateral. The foregoing
24 lien and security interest is and shall be a valid and perfected first priority security interest
25 in the Adequate Protection Collateral, regardless of whether U.S. Bank obtains a separate
26 security agreement or pledge agreement or files any financing statement. As further
27 adequate protection for, and to the extent of, the Collateral Usage:
28

        a.     U.S. Bank shall have and is hereby granted a priority claim under Bankruptcy Code § 507(a)(3) and Bankruptcy Code § 502(f) for any and all claims that U.S. Bank has against the Alleged Debtor under this Stipulation; and

        b.     U.S. Bank shall be entitled to administrative priority status pursuant to Bankruptcy Code § 507(b) with priority and super-priority over any and all other priority claims, administrative expenses, or other claims against Alleged Debtor whatsoever, heretofore or hereafter arising or incurred in this Case, or in any superseding case or cases under Chapters 7 or 11 of the Bankruptcy Code.

    4.     <u>Professional Fee Carve Out</u>. U.S. Bank agrees that notwithstanding the Forbearance Agreement and paragraph 3 hereof, its security interest to secure performance of the Gomes Loan Agreements in the Collateral and in the Adequate Protection Collateral, shall be subordinate to the payment by the Alleged Debtor of the expenses of its professionals, Rutter Hobbs & Davidoff, Incorporated, and MLP Consulting as set forth on the Budget.

    5.     **Order Approving Stipulation.** This Stipulation is conditioned upon approval, without substantive modification, by the Bankruptcy Court by an order in form and content approved by U.S. Bank ("Interim Order") pursuant to Bankruptcy Code §§ 105, 303(f), 361, 362, and 549(b) and all other applicable law. Upon entry of the Interim Order, this Stipulation shall be effective as of the Petition Date. If the Stipulation is approved only on an interim basis in the Initial Order, then within 15 days after entry of the Initial Order a hearing shall be held to consider final approval of the Stipulation pursuant to a final order in form and content approved by U.S. Bank (the "Final Order", and together with the Initial Order, collectively the "Order").

6. **Effectiveness of Stipulation.** Notwithstanding paragraph 5 above, upon execution of this Stipulation by the Alleged Debtor the lien granted to U.S. Bank pursuant to Section 3 hereof shall be effective immediately for the purpose of securing repayment of the Cash Usage, regardless of whether either or both of the Initial Order and the Final Order are ever entered. The Alleged Debtor agrees not to use U.S. Bank's Collateral except as set forth in the Budget and the Alleged Debtor represents and warrants that it has not used any of the same since the Petition Date.

7. **No 506(c) Surcharge.** No surcharge or other claim whatsoever shall be asserted or imposed against the Collateral, the Adequate Protection Collateral, and/or the respective proceeds thereof, either directly or indirectly, pursuant to section 506(c) of the Bankruptcy Code or otherwise. *[I don't think this is appropriate in this motion. It is not a cash collateral motion]*

8. **No Priming Liens.** As long as any portion of the Obligations remains unpaid, no order shall be entered in this Case or any subsequent Chapter 7 or 11 case which authorizes under any section of the Bankruptcy Code, including Bankruptcy Code Sections 105 or 364, the granting of any lien or security interest in any of the Collateral or Adequate Protection Collateral or the incurring of credit in favor of any party other than U.S. Bank that is entitled to priority over or parity with any of U.S. Bank's liens or security interests or super-priority administrative status equal or superior to that granted to U.S. Bank pursuant to this Stipulation and the Order (except for the Carve Out). .*[I don't think this is appropriate in this motion. It is not a cash collateral motion]*

9. **Termination Date.** Alleged Debtor's right to obtain release of and use funds pursuant to the Forbearance Agreement and this Stipulation shall terminate upon the earliest to occur of the following (unless extended by mutual written agreement of the Alleged Debtor and U.S. Bank, in which case no further order shall be necessary for such

extension) (the date of such termination being referred to herein as the "Termination Date"): (i) March 31,, 2010; (ii) such time that an order for relief is entered in this Case or this Case is dismissed; (iii) any breach by the Alleged Debtor of the Alleged Debtor's covenants, agreements or other obligations under this Stipulation; (iv) the occurrence of any Forbearance Default under the Forbearance Agreement (except to the extent that such default is a continuance of a default that existed on or before the Petition Date); (v) 15 days after the entry of the Initial Order, if the Initial Order was on an interim basis and the Final Order has not been entered; (vi) the appointment of a trustee, or an examiner with expanded powers in this Case; (vii) any order is entered staying, reversing, or modifying this Stipulation, the Initial Order or the Final Order; or (viii) Alleged Debtor institutes or files a pleading, an adversary proceeding, contested matter, or any other motion, or proceeding challenging, seeking to avoid, recover, disallow or subordinate against U.S. Bank, whether before this Court or any other court, the Obligations, the Loans, the Loan Documents, U.S. Bank's security interest in the Collateral or the Adequate Protection Collateral, U.S. Bank's liens, or any payments made to applications of funds by U.S. Bank on account of the Obligations (whether under this Stipulation or otherwise). From and after the Termination Date, the Alleged Debtor (including in its capacity as a debtor-in-possession, if the Case is converted to Chapter 11) shall no longer utilize any cash in which U.S. Bank has a security interest or lien unless and until the Alleged Debtor obtains U.S. Bank's written consent or an order of the Bankruptcy Court after a hearing on notice to U.S. Bank.

10. **Alleged Debtor Shall Operate in Ordinary Course of Business.** The Alleged Debtor shall use its best efforts to operate its business in the ordinary course of business and in an appropriate manner to maintain value and goodwill. The Alleged Debtor shall take all steps to ensure that it is in compliance with applicable laws and shall use its best efforts to preserve the value and existence of the Collateral and the Adequate Protection Collateral.

11. **Stipulation Binding on Successors; Liens and Reduction of Obligations Unavoidable.** The provisions of this Stipulation and the Order, including without limitation the liens and security interests granted herein, shall survive any dismissal of this Case or the confirmation of any Chapter 11 plan (except to the extent modified by such plan), and shall be binding upon and inure to the benefit of the Alleged Debtor, U.S. Bank, and their respective successors and assigns, including any chapter 11 or 7 trustee or other fiduciary hereafter appointed in this case as a legal representative of the Alleged Debtor or the Alleged Debtor's estate; provided, however, that no trustee or fiduciary for the Alleged Debtor may obtain or use funds pursuant to this Stipulation or the Order. Without limiting the generality of the foregoing, all of the liens, security interests and adequate protection granted herein, shall not be avoidable under any law, including without limitation Bankruptcy Code § 549(a). U.S. Bank is giving post-Petition Date value to the Alleged Debtor by agreeing to permit cash in which it has a security interest to be used, which value exceeds the amount of any post-Petition Date transfers that U.S. Bank has received or will receive, and therefore the parties acknowledge and agree that the terms of this Stipulation meet the elements of Bankruptcy Code § 549(b).

12. **Reservation of Rights.** Except to the extent set forth herein, entering into this Stipulation and the entry of an Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) (i) any of the rights of U.S. Bank under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of U.S. Bank to (i) request additional adequate protection of its interest in the Collateral or relief from or modification of the automatic stay extant under Section 362 of the Bankruptcy Code, and (ii) request dismissal of this Case or assert that this Case was not properly filed under Bankruptcy Code Section 303; (ii) any other rights, claims or privileges (whether legal, equitable or otherwise) of U.S. Bank; or (b) any of the rights of the Alleged Debtor under the Bankruptcy Code or under non-bankruptcy law.

13. **Time of Essence.** Time is of the essence of this Stipulation.

14. **Integration.** This Stipulation sets forth the entire agreement between the parties with regard to the subject matter hereof. All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties with regard to the subject matter hereof are contained herein. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by either party to the other with respect to the subject matter of this Stipulation. All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants, and warranties with respect to the subject matter hereof are waived, merged herein and therein and superseded hereby and thereby. This is an integrated agreement. Notwithstanding the foregoing, the pre-petition loan and security documents and other written pre-petition agreements between the parties remain unmodified except as previously amended in writing or as expressly modified herein.

15. **No Modification Unless in Writing.** No modification, amendment or waiver of any of the provisions of this Stipulation shall be effective unless evidenced by a writing signed by all the parties.

16. **Counterparts.** This Stipulation may be executed in any number of counterparts, which taken together shall be deemed to be the original.

IN WITNESS WHEREOF, Alleged Debtor and U.S. Bank have caused this Stipulation to be executed as of February __, 2010.

Gomes Enterprises, LLC

By:_____

1
2         Name:_____
3         Its:_____
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1　　　　　　　　　　　　　　　　　U.S. Bank National Association

2

3　　　　　　　　　　　　　　　　　By:_____

4　　　　　　　　　　　　　　　　　Name:_____

5　　　　　　　　　　　　　　　　　Its:_____

6

7　APPROVED AS TO FORM AND CONTENT:

　RUTTER, HOBBS & DAVIDOFF
8

9　By:_____
　　　Brian Davidoff
10　　David Joe
　　　Attorneys for Alleged Debtor
11　　Gomes Enterprises, LLC

12

13　SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

14　By:_____
　　　David J. McCarty
15　　Theodore A. Cohen
　　　Attorneys for U.S. Bank National Association
16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:1TAC1\402469642.3　　　　　　　　-17-　　　　　　　　　　　　STIPULATION

{7704.005-636355.DOC-(2)}

## CONSENT AND REAFFIRMATION BY GUARANTORS

Each of the undersigned guarantors consents to the foregoing Stipulation and agrees that none of the foregoing shall release or otherwise impair their existing guaranties of the obligations of the Alleged Debtor to U.S. Bank (and, in the case of Unlimited Metals, Inc., the security interests and liens it granted to U.S. Bank to secure its guaranty), and reaffirms such guaranty (and, in the case of Unlimited Metals, Inc., such security interests and liens.)

Unlimited Metals, Inc., a California corporation

By:_____

Name:_____

Its:_____


_____
David F. Gomes


_____
Sam Kuk Lee


_____
Seong (Steve) Joon Hwang